923 So.2d 101 (2005)
Mary Dale REVERE
v.
DOLGENCORP, INC., d/b/a Dollar General.
No. 2004 CA 1758.
Court of Appeal of Louisiana, First Circuit.
September 23, 2005.
*102 Charlsey Wolff, Metairie, Counsel for Plaintiff/Appellant, Mary Dale Revere.
*103 Gloria Lastia, Stephen Resor, New Orleans, Counsel for Defendant/Appellee, Dolgencorp, Inc. d/b/a Dollar General.
Before: WHIPPLE, McCLENDON, and WELCH, JJ.
WHIPPLE, J.
Claimant, Mary Dale Revere, appeals from a grant of summary judgment in favor of Dolgencorp Inc. d/b/a/ Dollar General ("Dollar General"), forfeiting her right to workers' compensation benefits under LSA-R.S. 23:1208, based upon a finding that she made material misrepresentations in connection with her claim. For the following reasons, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
On October 7, 2003, Revere filed a disputed claim for compensation with the Office of Workers' Compensation ("OWC"), alleging that on March 28, 2003, she "tripped over a potting soil display while carrying a large box of merchandise" in connection with her employment as a cashier/stock clerk at Dollar General # 8203 in Covington, Louisiana. In the claim, she sought additional indemnity benefits and medical treatment, contending Dollar General wrongfully terminated benefits.[1]
Subsequently, Dollar General filed a motion for summary judgment contending Revere had forfeited all rights to benefits to which she otherwise would have been entitled, pursuant to LSA-R.S. 23:1208, because Revere had made material misrepresentations for the purpose of obtaining workers' compensation benefits. On May 3, 2004, the OWC heard the matter and rendered judgment granting Dollar General's motion for summary judgment. The OWC also issued written reasons for judgment, concluding that she "provided false statements which were willful and for the purpose of obtaining benefits which is a violation of 23:1208."
Revere appeals, contending that the OWC erred in granting summary judgment and in finding that all benefits should be terminated prior to the date of her answers to interrogatories, i.e., January 12, 2004.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1st Cir.6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
An appellate court reviews an OWC's decision to grant a motion for summary judgment in workers' compensation cases de novo, using the same criteria that govern the OWC's consideration of whether summary judgment is appropriate. Newman v. Richard Price Construction, XXXX-XXXX (La.App. 1st Cir.8/8/03), 859 So.2d 136, 139. A claim under LSA-R.S. 23:1208 is appropriate for resolution by *104 way of summary judgment. LSA-C.C.P. art. 966(A)(2); LSA-R.S. 23:1317(A); Caye v. Slidell Travel Center, XXXX-XXXX (La. App. 1st Cir.12/31/02), 837 So.2d 144, 148, writ denied, XXXX-XXXX (La.4/21/03), 841 So.2d 797.
The initial burden of proof is on the moving party. Thereafter, the nonmoving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment must be granted. LSA-C.C.P. art. 966(C)(2). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Newman, 859 So.2d at 139.

WILLFUL MISREPRESENTATION

(Assignment of Error Number One)
Louisiana Revised Statute 23:1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits, and therefore, generally becomes applicable at the time of an employee's accident or claim. Resweber v. Haroil Construction Company, 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7, 9. This broadly worded statute encompasses false statements or misrepresentations made to anyone, including the employer, physicians or insurers, when made willfully or deliberately for the purpose of obtaining benefits. Resweber, 660 So.2d at 9. Moreover, the statute contains no requirement that an employee be put on notice of the consequences of making such false statements or misrepresentations. Resweber, 660 So.2d at 9.
Nonetheless, the requirements for forfeiture of benefits under section 1208 are that: (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber, 660 So.2d at 14. As the moving party, Dollar General had the burden in this summary judgment proceeding to establish that no material facts were in dispute and that under the undisputed facts, Revere willfully misrepresented her condition, as contemplated by LSA-R.S. 23:1208, thus entitling Dollar General to judgment as a matter of law.
In support of its motion for summary judgment, Dollar General submitted the following post-accident records: (1) medical records of Revere's March 30, 2003 visit to the emergency room at St. Tammany Parish Hospital; (2) medical records from Dr. Paul Doty, an orthopedic surgeon; (3) medical records from North Shore MRI; (4) medical records from Dr. Jeffrey H. Oppenheimer, a neurosurgeon; (5) medical records from Dr. Donald D. Dietze, Jr. at the North Institute; and (6) medical records from Dr. John G. Burvant, who examined Revere at the defendant's request. In addition to these medical records, Dollar General submitted interrogatories propounded to Revere and her answers to interrogatories and request for production of documents.
Dollar General also submitted Revere's pre-accident medical records from Tulane University Medical Center Satellite Clinic, consisting of a March 17, 2000 examination with x-rays, and an interpretative note from the radiologist and Dr. Mark J. Hontas, an orthopedic surgeon, stating that Revere:
has low back pain with left leg radiculopathy and to a lesser degree right leg radiculopathy. She is at the point where she can hardly walk. It looks as *105 if she has a positive straight-leg raise test. She has pain even in her foot. X-rays show decreased disk space narrowing at L4-5 and L5-S1. She needs to have an MRI. I have given her a slip for it. She is to come back after she gets the MRI. I also wrote her a prescription for Lorcet Plus.
According to Dollar General, these records clearly establish that Revere misrepresented her condition and should be deemed to have forfeited her right to benefits, as a matter of law. Specifically, Dollar General contends that the medical records and discovery responses are fraught with omissions and are incomplete, in that the records demonstrate that Revere had been specifically diagnosed with a lumbar problem in the office visit with Dr. Hontas three years prior to her work-related accident. Dollar General argues that her omission of Dr. Hontas's critical findings from her initial medical history at the hospital emergency room and initial visits to the orthopedic doctor was deliberate and constitutes a false and willful misrepresentation on her part.
Revere counters that when asked to complete forms or provide information, she answered all requests truthfully according to her understanding of her medical condition. She maintains that the omission of a one-time office visit and x-ray of her back, occurring over three years earlier, was merely inadvertent inasmuch as her primary focus at that time was on the orthopedist's and radiologist's diagnosis of gallstones and renal stones, which necessitated surgery. She further notes that all of her answers were honestly given in response to the questions which generally asked for "prior major illnesses and/or injuries," "previous injuries," and "prior surgeries," all of which she disclosed. She notes that the records document that when questioned about prior back pain, she readily and truthfully discussed having a "history of periodic low back pain but not like her present pain," "no previous injury in these areas" and "no prior major illnesses and/or injuries," as documented in the exhibits relied upon by Dollar General. (Emphasis added.)
In particular, with regard to any blanks or gaps in the records of the two initial health care providers about which Dollar General complains (St. Tammany Parish Hospital ER and Dr. Paul Doty), Revere maintains there was no purposeful omission or misrepresentation. She points out that from the very first time she sought treatment for the painful condition resulting from the instant accident and injuries and thereafter, the allegedly incomplete records document that she had degenerative disk disease and that she made no attempt to hide her prior periodic back pain which she described as feeling different from the acute, severe pain she developed after the accident at work and for which she sought emergency and continuing treatment. In sum, she argues that a showing of mere inadvertence does not satisfy the burden defendant had of showing a deliberate, purposeful or willful omission. As further support, her counsel notes that Revere was a sixty-two year old woman, with a seventh grade education, who had never made any prior claim for compensation. Also, she maintains that her answers to interrogatories candidly set forth her prior medical history vis-à-vis her pre-accident condition. Specifically, she notes Dollar General propounded the following interrogatory to her:

INTERROGATORY NO. 22:
In your Disputed Claim for Compensation, you claim to have injured your back. Please answer whether you have ever had any back problems before your accident at Dollar General. If so, please give a brief description of the type of *106 problems that you were having and provide the name, address, specialty and telephone number of any and all healthcare provider(s) that treated you for these injuries and the dates of treatment.
She further notes that on January 12, 2004, she answered the interrogatory to the best of her understanding of her pre and post-accident medical condition, as follows:

ANSWERS TO INTERROGATORIES NO. 22
I have never received any treatment for my back prior to my work related injury. I have never had any problems with my back prior to March 23, 2003. I did have periodic back pain, but nothing that prevented me from working or performing my usual daily activities. Occasionally, I had back pain and would take over the counter medicine such as Anacin for any back pain.
Thus, she argues, the record does not support the finding that she deliberately misrepresented her condition warranting forfeiture of benefits. Based on our de novo review, we agree.[2] As Revere properly notes, an erroneous statement is not necessarily a false representation; nor does it necessarily result in the forfeiture of benefits. Although summary judgments are now favored, the employer seeking dismissal on the basis of a 23:1208 violation still must prove that the false representation, if any exists, was willfully made and that it was made for the purpose of obtaining or defeating any benefit or payment. Newman, 859 So.2d at 141.
The word "willful" has been defined as "proceeding from a conscious motion of the will; voluntary; knowingly; deliberate; intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary." Grant v. Natchitoches Manor Nursing Home, 96-1546 (La.App. 3rd Cir.5/14/97), 696 So.2d 73, 76, writ denied, 97-1582 (La.10/17/97), 701 So.2d 1330. The relationship between a false statement and a pending claim is probative in determining whether the statement was made willfully for the purpose of obtaining benefits. Newman, 859 So.2d at 141. Also, a false statement, which is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose of obtaining benefits. Newman, 859 So.2d at 141. Nonetheless, as the courts have recognized, an inadvertent and inconsequential erroneous statement *107 will not result in the forfeiture of benefits. Resweber, 660 So.2d at 16.[3]
Inherent in the resolution of a LSA-R.S. 23:1208 case is the determination of whether a claimant's allegedly false misrepresentation is "willful." In making this determination and considering the exhibits filed in support of the motion, we are mindful that the trial court (and the appellate court on appeal) cannot make credibility determinations on a motion for summary judgment. Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, 99-2257, (La.2/29/00), 755 So.2d 226, 236. In deciding a motion for summary judgment, the court must assume that all of the affiants are credible, inasmuch as credibility issues have no place in the summary judgment procedure. Ravy v. Bridge Terminal Transport, XXXX-XXXX (La.App. 4th Cir.9/29/04), 883 So.2d 1139, 1144, writ denied, 2004-2916 (La.2/4/05), 893 So.2d 875. Also, because LSA-R.S. 23:1208 is quasi-penal, it must be strictly construed. Leonard v. James Industrial Constructors, XXXX-XXXX (La. App. 1st Cir.5/14/04), 879 So.2d 724, 730 (en banc), writ denied, XXXX-XXXX (La.9/24/04), 882 So.2d 1139.
Given the records and exhibits herein, the principles which govern our de novo consideration and the strict statutory construction mandated by LSA-R.S. 23:1208, we find that the records, on their face, do not undisputedly establish that "false representations" were "willfully made." Instead, we decline to infer such intent. We conclude that genuine issues of material fact remain, which precludes summary judgment ordering forfeiture or denial of benefits on this basis.[4]
We find merit to this assignment.

DATE OF TERMINATION OF BENEFITS

(Assignment of Error Number Two)
In this assignment, Revere contends that the OWC erred in terminating benefits on June 28, 2003. She asserts that if this court affirms the OWC's finding that she committed fraud pursuant to LSA-23:1208, benefits should have been terminated only as of January 12, 2004, the date Dollar General maintains she omitted Dr. Hontas' name from her discovery responses.
Because we find summary judgment was improvidently granted herein, we pretermit this assignment of error.[5]

CONCLUSION
For the above and foregoing reasons, the May 3, 2004 judgment of the OWC granting Dollar General's motion for summary *108 judgment is reversed. This matter is remanded for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed to the appellee, Dollar General.
REVERSED AND REMANDED.
McCLENDON, J., concurs and assigns reasons.
McCLENDON, J., concurs.
I respectfully agree with the result reached by the majority.
NOTES
[1] Although Dollar General initially accepted her claim as compensable, it terminated indemnity benefits on or about July 8, 2003 allegedly on the basis that the medical evidence indicated that Revere was no longer disabled and that her former job position had been made available to her, allegations denied by Revere.
[2] Revere's arguments appear to be well documented in several of the medical records attached to the motion for summary judgment. In particular, we note that although Dollar General attaches great significance to the "Past Medical History" section on the ER record being marked "None" in the intake nurse's record, the detailed "Nursing Assessment" shows "low back pain," "aches" and "pain interferes with function." Also, as Revere notes, the emergency room record clearly notes her pre-existing degenerative disk disease, contrary to Dollar General's complaint that she somehow misled her health care providers "early on." The records reflect that she admitted to having had periodic back pain while denying any previous injury to her back. Notably, none of the records relied upon by the defendant show that she sustained any accident resulting in "injury" other than the one at issue herein or that the condition noted by Dr. Hontas prevented her from working. Moreover, contrary to the OWC's statements in the reasons for judgment, the records do not reflect that she had an MRI prior to the instant incident; nor do the records establish that she required or obtained further orthopedic care. Indeed, the records reflect only the one-time visit to Dr. Hontas three years earlier, as a result of which she submitted to gallbladder surgery but did not seek or obtain any further treatment for back problems.
[3] Noting that her answers to interrogatories were not signed by her, Revere's counsel argues that in the absence of any "live and sworn testimony," i.e., by deposition or affidavit, Dollar General can not meet its burden of proving that the false misrepresentation was "willful," as opposed to merely inadvertent. However, Revere fails to cite any authority for this court to impose the requirement that a "false statement or representation" be in the form of "live and sworn testimony." As set forth above, LSA-R.S. 23:1208 is not limited to sworn testimony; instead, the statute encompasses false statements or misrepresentations made to anyone, including the employer, physicians, or insurers, when made willfully or deliberately for the purpose of obtaining benefits. See Resweber, 660 So.2d at 9.
[4] In so finding, we express no opinion as to the ultimate merits of the claim, which necessarily will involve the weighing of evidence and resolution of issues of credibility.
[5] We note, however, that this circuit has held that benefits should be terminated from the date of the misrepresentation prospectively in the event of a finding of a LSA-R.S. 23:1208 violation. Leonard, 879 So.2d at 730.